[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 24, 2009
THOMAS K. KAHN
CLERK

No. 08-12997
Non-Argument Calendar

_____

D. C. Docket No. 06-23086-CV-CMA

PAULETTE ROXBURY-SMELLIE,

Plaintiff-Appellant,

versus

FLORIDA DEPARTMENT OF CORRECTIONS,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 24, 2009)

Before HULL, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Paulette Roxbury-Smellie appeals from the district court's grant of summary judgment in favor of the Florida Department of Corrections ("FDOC") in her employment discrimination suit filed pursuant to Title VII of the Civil Rights Act

of 1964, 42 U.S.C. § 2000e-2(a), in which Roxbury-Smellie, a Black Bahamian female, had alleged that her employer, the FDOC, had fired her on the basis of her race and national origin. On appeal, Roxbury-Smellie argues that: (1) the district court abused its discretion when it refused to apply the public records hearsay exception to statements made by Roxbury-Smellie's co-workers; and (2) the district court erred when it granted summary judgment in favor of the FDOC. After careful review, we affirm.

We review a district court's evidentiary rulings for abuse of discretion, and will reverse only if the movant establishes that the ruling resulted in substantial prejudice. Conroy v. Abraham Chevrolet-Tampa, Inc., 375 F.3d 1228, 1232 (11th Cir. 2004). In applying the standard, we will affirm "unless the district court has made a clear error of judgment or has applied an incorrect legal standard." Id. (quotations omitted). We review a district court's grant of summary judgment de novo. Holloman v. Mail-Well Corp., 443 F.3d 832, 836 (11th Cir. 2006). "Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law in favor of the moving party." Id. at 836-37.

First, we find no merit to Roxbury-Smellie's claim that the district court abused its discretion when it refused to apply the public records hearsay exception

2

to her co-workers' statements during their interviews with an Equal Employment Opportunity Commission ("EEOC") investigator. A court should not consider inadmissable hearsay introduced "to defeat summary judgment when that hearsay will not be reducible to admissible form at trial." Pritchard v. Southern Co. Services, 92 F.3d 1130, 1135 (11th Cir. 1996). Statements that fall within an exception to the hearsay rule can be considered by a district court when it rules on a motion for summary judgment. Macuba v. Deboer, 193 F.3d 1316, 1323 (11th Cir. 1999). The Federal Rules of Evidence create an exception to the hearsay rule for "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." Fed. R. Evid. 803(8)(C).

The statements made by Roxbury-Smellie's co-workers, Kerlande Aboite and Silvia Escobar, did not fall into the public records exception because they were not a factual finding made by the EEOC investigator, but rather a record of the interviews conducted by the EEOC investigator. Id. Accordingly, the district court did not abuse its discretion when it determined the interview notes did not fall within the hearsay exception for public records.

We also reject Roxbury-Smellie's argument that the district court erred in granting summary judgment in favor of the FDOC. Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). "To establish a prima facie case for disparate treatment in a race discrimination case, the plaintiff must show that: (1) she is a member of a protected class; (2) she was subject to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job." Burke-Fowler v. Orange County, Fla., 447 F.3d 1319, 1323 (11th Cir. 2006) (citing EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1286 (11th Cir. 2000)).

Where, as here, the plaintiff seeks to establish her disparate treatment claim using indirect or circumstantial evidence, we evaluate the claim using the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Burke-Fowler, 447 F.3d at 1323. Under McDonnell Douglas, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. 411 U.S. at 802. If the plaintiff establishes a prima facie case of discrimination, then the burden shifts to the defendant to "show a legitimate, non-

4

discriminatory reason for its employment action." Burke-Fowler, 447 F.3d at 1323. If the employer is able to meet its burden, the plaintiff must then show that the proffered reason is merely a pretext for discrimination. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981).

In order to establish a prima facie case of discrimination, the plaintiff may "show that [her] employer treated similarly situated employees outside [her] classification more favorably." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (citing Coutu v. Martin Cty. Bd. of Cty. Commissioners, 47 F.3d 1068, 1073 (11th Cir. 1995)). In evaluating whether employees accused of misconduct are similarly situated, we look to "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Burke-Fowler, 447 F.3d at 1323 (quoting Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999)). We "require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Id. (quotations omitted).

Where evidence of similarly situated employees is unavailable, the plaintiff is required to produce other circumstantial evidence of discrimination to establish her prima facie case of disparate treatment. See Holifield, 115 F.3d at 1562 (holding that "[i]f a plaintiff fails to show the existence of a similarly situated

5

employee, summary judgment is appropriate where no other evidence of discrimination is present" (emphases omitted)).

Roxbury-Smellie failed to meet her burden of establishing a prima facie case of discrimination. As the record shows, the three individuals Roxbury-Smellie identified as being similarly situated to her -- Phyllis Gainer, Adam Thomas, and Marvin Williams -- did not engage in misconduct that was "nearly identical" to the threatening comments she was terminated for making to her supervisor. Gainer, who was only reprimanded, merely hung up the phone on her supervisor during a heated conversation. Thomas's misconduct -- an arrest for domestic violence -- took place outside of the office and did not involve a superior or fellow co-worker, and furthermore, Roxbury-Smellie did not offer any evidence of the FDOC's disposition of Thomas's case. Lastly, although Wilson is a black islander like Roxbury-Smellie, Roxbury-Smellie did not produce any evidence as to his misconduct or the FDOC's subsequent actions with regard to that misconduct.

The other evidence Roxbury-Smellie submitted also was not sufficient to establish a prima facie case of discrimination. She relied on the testimony of Lydia Martinez to prove that her supervisor, Marilyn Tift, bore feelings of "racial animus" towards black Bahamians. However, while Martinez's testimony indicated that there was some racial disharmony in the office where she and

6

Roxbury-Smellie worked, it did not provide any evidence that the FDOC made any employment decisions based on race or national origin.

Moreover, the statements made by Aboite and Escobar to the EEOC would not have established a prima facie case of discrimination if they had been admitted into evidence. Aboite said in her interview that Tift had a problem with Spanish employees, but that she had never heard Tift say anything negative about Roxbury-Smellie or Bahamians specifically. Similarly, Escobar said in her interview that she had heard rumors that Tift did not like Hispanics, but like Aboite, she made no statements regarding the treatment of Roxbury-Smellie specifically or Bahamians in general. As a result, these two statements, if admitted into evidence and viewed in the light most favorable to Roxbury-Smellie, still do not establish a prima facie case of discrimination against the FDOC.

Finally, although the district court was not required to make a ruling as to pretext, it did not err when it determined, in the alternative, that the FDOC's explanation for its termination of Roxbury-Smellie's employment was not pretextual. First, because Roxbury-Smellie had not identified any valid comparators, she did not demonstrate that the FDOC treated other employees outside of her protected class who engaged in similar conduct more favorably. Second, even though Roxbury-Smellie denied that she had conducted herself in a

manner unbecoming to a public official, she did not claim that the FDOC's version of the incident at issue was a fabrication nor did she argue that her supervisors did not have a good faith belief that her statements were threatening. See Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir. 1989) (holding "even if a Title VII claimant did not in fact commit the violation . . . an employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation").

For these reasons, the district court did not err in granting summary judgment on Roxbury-Smellie's Title VII disparate treatment claim.

**AFFIRMED.**